IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. 2:05-CR-73 |
| ) | |
| OCTAVIO LEON-LLERENA and ) | |
| JUAN HERNANDEZ-RIVAS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the: (1) Motion for Leave of Court to File Motion to Suppress Evidence and Memorandum of Authorities in Support Thereof; and (2) Motion to Suppress Evidence and Memorandum in Support Thereof, both filed by Defendant, Octavio Leon-Llerena, on November 17, 2005. For the following reasons, the Motion for Leave to File is **GRANTED**. The Motion To Suppress is **DENIED**.

BACKGROUND

Defendant, Octavio Leon-Llerena, was charged in a superseding indictment alleging that he conspired to transport and move for commercial and private gain illegal aliens (Count 1), transported and moved illegal aliens for commercial and private gain (Count 2), and eluded examination and inspection by immigration officers (Count 3).

In his motion to suppress, Leon-Llerena argues that all evidence, including any statements made by Defendant or others, seized as a result of the alleged unlawful stop and subsequent search of Defendant and the vehicle he was driving on May 10, 2005, should be suppressed. Specifically, Leon-Llerena challenges that stop and subsequent search of the vehicle, claiming that the police officer stopped the van on a pretextual basis and that the police officer lacked reasonable suspicion. Defendant also argues that the police officer exceeded the scope and justification of the stop when he asked Leon-Llerena to leave the vehicle and questioned the passengers in the vehicle.

The Court held an evidentiary hearing on November 21, 2005, at which Trooper Jason Carmin, a trooper with the Indiana State Police, testified. In making the following findings of fact, the Court considered the credibility of the witnesses.

DISCUSSION

Findings of Fact

Trooper Carmin testified consistently with his Indiana State Police Supplemental Case Report dated May 13, 2005. Trooper Carmin stated that on May 10, 2005, at approximately 10 a.m., he observed the full-sized white van in question traveling eastbound on the Indiana Toll Road (I-80/90), cross over the white dotted line (the center line) on two occasions within a mile. Specifically, Trooper Carmin testified that while he was in the left lane traveling eastbound, he

saw the van in the right lane about 200-300 feet ahead of him. There was another vehicle in the right lane, behind the van, but ahead of the police car. Other vehicles were in front of the van. Trooper Carmin saw the van cross over the center line about one foot into the left lane twice within one mile. The van did not use its turn signal when it crossed over the line. Trooper Carmin believed it was possible that the driver was intoxicated and a possible danger to others using the highway. Trooper Carmin testified that he decided not to continue to follow the van, but to pull it over instead, because he thought the van may make a more dangerous movement in the future. The van had dark tinted windows, so Trooper Carmin could not see the other occupants in the van before he initiated the stop. The speed limit was 65 m.p.h., and Trooper Carmin believed the van was traveling the speed limit.

According to the police report, Trooper Carmin stopped the van, identified himself as a trooper with the Indiana State Police, and requested the driver's license of the driver (Defendant Leon-Llerena). Leon-Llerena appeared very nervous - his hands were visibly shaking and he would not make eye-contact with Trooper Carmin. According to the police report, Trooper Carmin asked Leon-Llerena to exit the van, and Leon-Llerena complied. After asking Leon-Llerena several questions, Trooper Carmin approached the passenger side of the van and asked the front seat passenger (co-defendant Juan Hernandez-Rivas) if any of the occupants in the van had paperwork to be in the United

States, and Hernandez-Rivas said none of them did.  Eventually, the occupants of the van were interviewed by immigration officers. Although one passenger was legally in the United States, the rest admitted they were illegally in the country and they had paid $400 each to be driven from California to New Jersey.  Leon-Llerena received an Indiana State Police warning for "unsafe lane movement." No statute was cited in the warning.

Conclusions of Law

   Leon-Llerena contends that the traffic stop was merely a pretext to search for illegal aliens, that Trooper Carmin did not have reasonable suspicion to make the stop, and that no Indiana State or municipal law justifies the stop.  The police may not use a traffic stop as a pretext to search for evidence.  *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995).  However, the Seventh Circuit has held that an arrest or stop is constitutional regardless of hidden motive "so long as the police are doing no more than they are legally permitted and objectively authorized to do, an arrest [or stop] is constitutional."  *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that actual motivations of police play no role in Fourth Amendment probable cause analysis - a pretextual stop may be lawful if it is objectively reasonable).

   The Court uses an objective, two-prong test to determine whether

a law enforcement officer's stop is based on reasonable suspicion, or is nothing more than a pretext for searching a vehicle.  *See United States v. Quinones-Sandoval*, 943 F.2d 771, 774 (7th Cir. 1991); *Trigg*, 878 F.2d at 1041.  The first prong is whether the officer had reasonable suspicion to make the particular stop, and the second prong is whether state or municipal law afforded a basis for the stop. *Quinones-Sandoval*, 943 F.2d at 774; *United States v. Fiala*, 929 F.2d 285, 287 (7th Cir. 1991); *Trigg*, 878 F.2d at 1041.  If both prongs are met, then the stop satisfies the Fourth Amendment's reasonableness requirement.  *Trigg*, 878 F.2d at 1041.

The Court finds that both prongs of the objective test were met in this case.  First, the Court finds credible Trooper Carmin's testimony that he saw the van in question swerve over the white center line twice in one mile.  Second, such conduct constitutes a violation of the Indiana Motor Vehicle Code.  Indiana Code section 9-21-8-24 (cited by Trooper Carmin during the suppression hearing as the basis for his stop) provides in pertinent part that "[a] person may not . . . change from one (1) traffic lane to another; unless the movement can be made with reasonable safety.  Before making a movement described in this section, a person shall . . . give an appropriate stop or turn signal . . . if any other vehicle may be affected by the movement."  Ind. Code § 9-21-8-24. Additionally, section 9-21-8-11 of the Indiana Motor Vehicle Code provides in pertinent part that "[w]henever a roadway has been divided into three (3) or more clearly

marked lanes for traffic . . . [a] vehicle shall be driven as nearly as practicable entirely within a single lane and may not be moved from the lane until the person has first ascertained that the movement can be made with safety."  The Indiana Toll Road is a four-lane roadway, there was at least one other vehicle in the near vicinity, and it is undisputed that the van did not use a turn signal.  Thus Leon-Llerena's crossing over the center-line can be deemed a violation of either statute, or both.

The Court notes that other courts in this circuit have held that improper lane usage is a legitimate reason for an investigatory stop.  In *Quinones-Sandoval*, the Seventh Circuit found a stop of a car for twice running over the left and right fog lines of the highway was legitimate.  943 F.2d at 774.  The court stated "[t]here is no doubt . . . that an Illinois patrol officer is authorized to stop a driver for improper lane usage and to issue a warning ticket." *Id.; see also Fiala*, 929 F.2d at 287-88 (finding stop of a car for weaving over the fog line for 5-10 seconds was legitimate stop).  To the extent Leon-Llerena argues that crossing the center line was too minor of an offense to justify the stop, the Seventh Circuit has indicated that "our objective analysis is indifferent to the relatively minor nature of the traffic offense." *United States v. Williams*, 106 F.3d 1362, 1365-66 (7th Cir. 1997) (citing United *States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996) (probable cause existed where automobile was missing rear license plate in violation of Wisconsin law); *United*

*States v. Smith*, 80 F.3d 215 (7th Cir. 1996) (probable cause was formed where air freshener hanging from rear view mirror, or where cracked windshield and automobile crossed fog lines, or where improper use of turn signal and automobile straddled lanes, all in violation of Illinois law)).

Because Officer Carmin witnessed the van in question cross over the center line twice within a mile when another vehicle was in close proximity, the Court finds that the officer had probable cause to believe that the driver, Leon-Llerena, had committed a traffic offense, and posed a danger to others on the highway. Therefore, this Court concludes that Trooper Carmin had reasonable suspicion to stop Leon-Llerena's van for committing a traffic violation, and that the stop was proper.

Additionally, "when there is reasonable suspicion that the occupants of a vehicle are engaged in other illegal activity, an officer may prolong a traffic stop to investigate that activity."). *United States v. Walden*, 146 F.3d 487, 490 (7th Cir. 1998). In this case, Trooper Carmin noted that Leon-Llerena appeared to be very nervous, he would not make eye contact, and his hands were visibly shaking. Thus, the officer had reasonable suspicion to question Leon-Llerena as well as the other occupants of the van.

CONCLUSIONS

For the reasons set forth above, Defendant Leon-Llerena's Motion

-7-

for Leave to File is **GRANTED**.  Additionally, Leon-Llerena's Motion To Suppress is **DENIED**.


**DATED:  November 29, 2005**             **/s/RUDY LOZANO, Judge**
                                          **United States District Court**